IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROBERT SALLEY and**
**BONITA CUNNINGHAM**                                               **PLAINTIFFS**

**v.**                                                        **CAUSE NO: 4:18 -CV-66-MPM-JMV**

**WEBSTER COUNTY, MISSISSIPPI, SHERIFF TIM MITCHELL,**
**IN HIS OFFICIAL CAPACITY, CHIEF DEPUTY DILLON**
**CATES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,**
**and DEPUTY BLAKE LOVE, IN HIS INDIVIDUAL AND OFFICIAL**
**CAPACITIES**                                                                      **DEFENDANTS**

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

NOW COME DEFENDANTS, **WEBSTER COUNTY (Officially), SHERIFF TIM MITCHELL (Officially), DEPUTY DILLON CATES (Officially and Individually),** and **DEPUTY BLAKE LOVE (Officially and Individually)**, by counsel, and respectfully submit their supporting authorities for this Court to make a finding of qualified immunity, dismissal and/or judgment on the pleadings, to-wit:

**1) FEDERAL PREMISE:** This lawsuit arises from claims brought on behalf of (Plaintiff Salley) a fugitive with a felony bench warrant for possession of methamphetamine and his female passenger (Plaintiff Cunningham) who allege state and federal claims arising from their felony flight from lawful arrest. It is clear from the face of the Plaintiffs' Complaint that Federal Claims are constitutionally deficient. First, Plaintiff Salley's issues of pursuit and excessive force do not survive qualified immunity. Second, there is not a plausible violation of the United States Constitution under the requisite *intent to injure standard* applicable to passenger claims of Plaintiff Cunningham. Third, both Plaintiffs have failed to plead a plausible official capacity federal claim. Fourth, their

1

Complaint includes duplicate official capacity defendants.

Separately, Plaintiff Cunningham is included in the instant case, her role being that of a passenger detained at gunpoint, handcuffed and held until the scene was secure and supporting law enforcement officers for other agencies were able to locate Plaintiff Salley hiding under a vehicle behind his mother's house. Obviously, a seizure occurred. *Terry v. Ohio,* 392 U.S. 1 (1968)("Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person . . . ."). Plaintiff Cunningham's temporary seizure was an investigatory seizure triggering a Fourth Amendment reasonableness analysis. See *Brown v. Texas,* 443 U.S. 47, 50–51 (1979). Constitutionally, this was clearly a reasonable means of determining her role in the felony flight, even if solely for investigative purposes. *Lincoln v. Turner,* 874 F.3d 833, 840 (5th Cir. 2017) (quoting *United States v. Massi,* 761 F.3d 512, 520 (5th Cir. 2014)). Moreover, Plaintiff Cunningham cannot meet her burden most recently articulated under *District of Columbia v. Wesby,* 138 S. Ct. 577 (2018), saying that the "'clearly established' standard requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him.*" *Id*. at 590 (emphasis added). In short, Plaintiff Cunningham's separate claims are not sustainable.

**2) STATE LAW PREMISE:** It is equally clear from the fact of Plaintiffs' Complaint that State Law Claims are subject to multiple reservations of immunity under state law. First, suit was filed within thirty days of the incident, affording no time for the requisite tolling upon notice as provided by *Miss. Code Ann*. §11-46-11. Second, intentional torts are barred as a matter of law. Third, unlawful flight by a wanted felon at speeds exceeding 100 miles per hour is absolutely barred by law enforcement immunity. *Miss. Code Ann*. §11-46-9(1)(c). Fourth, there is but one single MTCA cap among defendants, no right to a jury and no recovery for punitive damages or attorney

2

fees, and there is no joint and several liability applicable to public entity claims under state law.

**3) STANDARD:** The standard for addressing a motion for judgment on the pleadings under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209–10 (5th Cir. 2010). Thus, to survive moving Defendants' Motion, Plaintiffs' Complaint must provide the grounds for entitlement to relief—including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir. 2007)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 553-56 (2007)). The Complaint must allege "sufficient factual matter…to state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009).

**4) PLAINTIFFS' COMPLAINT:** Plaintiffs' Complaint **[Doc. 1]** seeks relief under state and federal law. Nor is there any averment that the deputies misrepresented the circumstances involved, intended injury to Plaintiff Cunningham or that it was unlawful to secure her at the scene. Moreover, there is no averment that any state mandated training was deficient as to either of the deputies.

**5) NATURE OF FEDERAL RIGHT AT ISSUE:** *42 U.S.C. § 1983* imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights,

privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). A plaintiff cannot succeed on a § 1983 claim merely by showing any deprivation of his rights; § 1983 was intended to preserve rights protected by federal law. *Wright v. Collins*, 766 F.2d 841, 849 (5th Cir.1985).

### A. DRIVER [Plaintiff Salley]

"'[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied.'" *Scott v. Harris,* 550 U.S. at 381 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596–597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)). "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L. Ed.2d 443 (1989). To plead a § 1983 excessive force claim, "the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir.2008).

At the time of this incident, there existed a clearly established constitutional right to be free from the use of excessive force. Yet, such claims are virtually untenable in most situations of this nature as evidenced by the three case notes below:

i) *Scott v. Harris*, 550 U.S. 372, 377, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007).("It was [Plaintiff], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that [Officer Clark] confronted.").

ii) *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 581 (5th Cir. 2009)("Like in Scott, it was Pasco himself who created this dangerous situation and put himself at risk when he fled from the officers. As indicated by the undisputed facts of the chase, it was reasonable for Knoblauch to believe that Pasco would continue to pose a danger to anyone he might encounter. Stuck between the choice of letting a presumptively intoxicated and reckless driver continue unabated or bumping the suspect off the road, Knoblauch chose the course of action that would potentially save the lives of individuals who had no part in creating the danger. Although this choice ended tragically with Pasco's death, the balancing test indicates that Knoblauch's actions were reasonable.").

iii) *Mullenix v. Luna,* 136 S. Ct. 305, 309, 193 L. Ed. 2d 255 (2015)("In this case, Mullenix confronted a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer at Cemetery Road.").

**B. PASSENGER [Plaintiff Cunningham]**

As to the pursuit, the law is quite restrictive, as Fourteenth Amendment principles apply. The case of *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), controls and stands for the premise that high-speed police chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under Fourteenth Amendment for deprivation of substantive due process, redressable by action under § 1983. The SCOTUS held a police officer does not violate substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. Pp. 1713–1721. Simply put, there is not a violation of an underlying constitutional theory at issue here.

Separately, Plaintiff Cunningham is included in the instant case, her role being that of a passenger detained at gunpoint, handcuffed and held until the scene was secure and supporting law enforcement officers for other agencies were able to locate Plaintiff Salley hiding under a vehicle behind his mother's house. Obviously, a seizure occurred. *Terry v. Ohio,* 392 U.S. 1 (1968)("Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person . . . ."). Plaintiff Cunningham's temporary seizure was an investigatory seizure triggering a Fourth Amendment reasonableness analysis. See *Brown v. Texas,* 443 U.S. 47, 50–51 (1979). Constitutionally, this was clearly a reasonable means of determining her role in the felony flight, even if solely for investigative purposes. *Lincoln v. Turner,* 874 F.3d 833, 840 (5th Cir. 2017) (quoting *United States v. Massi,* 761 F.3d 512, 520 (5th Cir. 2014)). Moreover, Plaintiff Cunningham cannot meet her burden most recently articulated under *District of Columbia v. Wesby,* 138 S. Ct. 577 (2018), saying that the "'clearly established' standard requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him.*" *Id*. at 590 (emphasis added). In short, Plaintiff Cunningham's separate claims are not sustainable.

**6) QUALIFIED IMMUNITY:** Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.,* 277 F.3d 743, 753 (5th Cir. 2001). A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." *Mangieri v. Clifton,* 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475

U.S. 335, 341 (1986).

In assessing a claim of qualified immunity, courts should apply a two-part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194 (2001); see also *Pearson v. Callahan,* 129 S. Ct. 808 (2009)("order of battle" delineated in *Saucier* is no longer mandatory). However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." *Id*. at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id*. at 202.

The purpose of qualified immunity is to protect public officials from the "burden of fighting lawsuits which arise from the good-faith performance of their duties." *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997). Thus, qualified immunity "is not just immunity from judgment, but rather, is immunity from all aspects of suit." *Jacques v. Procunier,* 801 F.2d 789, 791 (5th Cir. 1986). The qualified immunity issues in a case are "threshold" issues and must be dealt with as expeditiously as possible and prior to resolving non-immunity issues. See *Harlow v. Fitzgerald,* 102 S.Ct. 2727, 2728 (1982); see also L. U. Civ R. 16.1(B)(4).

To fulfill the protective purpose of qualified immunity, the Fifth Circuit has long required more than mere "notice pleadings" when a claimant asserts a Section 1983 claim against an official in his individual capacity. *Elliott v. Perez,* 751 F.2d 1472 (5th Cir. 1985). More specifically, when an officer raises the qualified immunity defense, a complaint "must present more than bald allegations and conclusory statements." *Wicks v. Mississippi State Employment Svcs.,* 41 F.3d 991,

7

995 (5th Cir. 1995). In fact, a plaintiff must "allege with sufficient particularity all facts establishing a right to recovery, including facts which negate the official's immunity defense." *Wicks,* 41 F.3d at 995; see also *Nunez v. Simms,* 341 F.3d 385 (5th Cir. 2003)(holding that heightened pleading in qualified immunity cases requires plaintiffs rest complaint on more than conclusions alone); *Foster v. City of Lake Jackson,* 28 F.3d 425 (5th Cir. 1994)(burden of negating qualified immunity defense lies with plaintiff). Plaintiff "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions." *Floyd v. City of Kenner,* 351 Fed. Appx. 890, 893 (5th Cir. 2009)(citing *Schultea v. Wood,* 47 F.3d 1427, 1433-34 (5th Cir. 1995)). Furthermore, "[h]eightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999). Plaintiffs' Complaint does not meet the heightened pleading standard.

**7) FEDERAL THEORY - TRAINING:** As noted above, there is no issue raised in the complaint of state mandated training for either Deputy which was deficient in any way. To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the sheriff was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *World Wide Street Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). The Fifth Circuit has held that when officers have received training as required by state law, the plaintiff must show that the legal minimum of training was inadequate. *Benavides v. County of Wilson,* 955 F.2d 968, 973 (5th Cir. 1992). Plaintiffs' training theory fails.

**8) MISSISSIPPI TORT CLAIMS ACT:**

    **A. NO NOTICE OF CLAIM**

The Plaintiffs have failed to substantially comply with the notice of claim requirements of § 11-46-11 of the Mississippi Code. "If a plaintiff in an MTCA case fails to provided proper notice prior to filing suit, the complaint should be dismissed with prejudice." Strict compliance with the notice statute is not required, but substantial compliance is. *O'Hara v. City of Hattiesburg*, No. 2015-CP-00911-COA, 2017 WL 1090863, at *3 (Miss. Ct. App. Mar. 21, 2017).

*Miss. Code Ann.* § 11-46-11 requires a Notice of Claim.

(1) After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.

The manner of service is also provided:

(i) For local governments:

    1. If the governmental entity is a county, then upon the chancery clerk of the county sued.

Moreover, where a plaintiff *[such as Plaintiffs]* does not include information touching upon all seven categories of information required by §11-46-11, then the plaintiff has failed to comply with the notice requirements. *Parker v. Harrison Co. Db. Sup'rs*, 987 So. 2d 435, 439 (Miss. 2008), *South Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1257-58 (Miss. 2006) (holding that failure to provide even one of the seven categories of information is failure to comply). The seven categories

9

of information a party is statutorily required to submit in a notice of claim are: 1) the circumstances which brought the injury about; 2) the extent of the injury; 3) the time and place of the injury; 4) the names of all persons known to be involved; 5) the amount of money damages sought; 6) the residence of the person making the claim at the time of the injury; 7) the claimant's residence at the time of filing the notice. *Miss. Code Ann.* § 11-46-11(b)(3).

In sum, Plaintiffs failed to comply with the notice requirements of §11-46-11 of the Mississippi Code, established precedent dictates that this action must be dismissed. *E.G. O'Hara*, No. 2015-CP-00911-COA, 2017 WL 1090863, at *3.

### B. NO INTENTIONAL TORTS

Municipal actors within the course and scope of employment are presumptively immune from individual claims under state law.[1] Plaintiffs' Complaint does not allege any fact or circumstance from which that presumption may be set aside. In addition to qualified immunity, the Defendant Deputies should enjoy statutory individual capacity immunity under state law as well.

### C. NO NEGLIGENCE CLAIMS

There are no negligence claims authorized against law enforcement under state law. See *Miss Code Ann.* §11-46-9(1)(c).[2] Plaintiffs' claims premised upon negligence theories should be

---

[1] "No employee shall be personally liable for acts or omissions occurring within the course and scope of the employee's duties" – See *Miss. Code Ann*. §11-46-7(2) – "For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted **fraud, malice, libel, slander, defamation or any criminal offense**." See: *City of Jackson v. Sandifer*, 107 So. 3d 978 (Miss. 2013)(Governmental immunity is waived for employee misconduct only if an employee is acting within the course and scope of his employment.).

[2] **SALLEY WAS ALREADY INDICTED AND IS NOW CHARGED WITH FELONY FLIGHT** *Miss Code Ann.* § 11-46-9(1)(c) provides in relevant part that " (1) A governmental

dismissed.

### D. NO JOINT AND SEVERAL CLAIMS

*Miss. Code Ann.* §85-5-7 (Joint tortfeasors; nature of liability) is inapplicable to claims arising under the Mississippi Tort Claims Act. The statute specifically provides "(6) Nothing in this section shall be construed to create a cause of action. Nothing in this section shall be construed, in any way, to alter the immunity of any person." Plaintiffs' joint and several theories must fail as well.

**9) INJUNCTIVE RELIEF:** There simply is no federal jurisdiction to grant Plaintiffs some form of immunity by injunction from future criminal acts.[3]

Were the Court to assume jurisdiction, Plaintiffs cannot satisfy the four mandatory elements required for injunctive relief:

1) a substantial likelihood of success on the merits;

2) a substantial threat that failure to grant the injunction will result in irreparable injury;

3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and,

---

entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;"; See Also: *City of Greenville v. Jones,* 925 So. 2d 106 (Miss. 2006).

[3] ***Younger abstention*** is appropriate "where absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Ibarra v. Bexar County Hospital Dist.,* 624 F.2d 44, (5th Cir. 1980)(emphasis added)(citing *Colorado River Water Conservation District v. United States,* 424 U.S. at 816, 96 S. Ct. at 1245; see *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)). See also: *Perez v. Ledesma,* 401 U.S. 82, 85, 27 L. Ed. 2d 701, 91 S. Ct. 674 (1971); and, *Kugler v. Helfant,* 421 U.S. 117, 124-25, 44 L. Ed. 2d 15, 95 S. Ct. 1524 (1975)).

11

4)      the injunction will not have an adverse effect on the public interest.[4]

In *Williams v. Kaufman County,*[5] a demand for injunctive relief concerning a prohibition against future strip searches at a local jail was addressed as not being in the public interest. The court noted sound policy reasons for not wanting to assume the duties of administration of the Kaufman County Jail and found no purpose in enjoining the County and its Sheriff from violating the United States Constitution when they already have a duty to obey and enforce it. *Id*. Similar to the public officials in Kaufman County, little public value would arise in this case from an order enjoining the County to follow the Constitution.

**10) SUMMATION:** Plaintiffs wholly fail to provide substantive factual details specifying how the defendant Deputies directly participated in any alleged unconstitutional conduct. They clearly place him within the course and scope and clearly fail to aver conduct which calls into question either the intent to injure standard of *Sacramento v. Lewis* or the individual immunity standard of the MTCA. As to Webster County, the complaint suffers from 1) a lack of a cognizable constitutional theory; 2) no legitimate training issue; and, 3) no conduct which equates with a waiver of law enforcement immunity. In short, all claims herein should be dismissed.

Significantly, Plaintiffs may not rely on collective allegations but, rather, must specify how each defendant was involved in the alleged unconstitutional conduct. See *Bivens v. Forrest Cnty.,* No. 2:13-CV-8-KS-MTP, 2015 WL 1457529, at *7 (S.D. Miss. Mar. 30, 2015)(holding that "collective allegations" against multiple defendants are insufficient to meet the heightened pleading

---

[4] *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir. 2001).

[5] *Williams v. Kaufman County*, 2002 U.S. Dist. LEXIS 5555 (N. Dist. Texas 2000).

standard). Because Plaintiffs have failed to meet the heightened pleadings standard, their federal claims against these individual Defendants must be dismissed. In the alternative, this Court should order a *Schultea* Reply requiring Plaintiffs to provide information sufficient to overcome each individual Defendant's immunity defenses. *Schultea v. Wood,* 47 F.3d 1427, 1433-34 (5th Cir. 1995).

Ultimately, Plaintiffs want this federal court to instruct state officials not to arrest them again in spite of one pre-existing indictment and new charges of felony flight.

**NOW, THEREFORE,** these Defendants respectfully move this Court to dismiss the instant Complaint with prejudice pursuant to Rule 12(b)(6) & (c), *Fed. R. Civ. Proc.*

**FILED** this the 16th day of April, 2018.

                 **JACKS | GRIFFITH | LUCIANO, P.A.**

              By:  /s/ *Daniel J. Griffith*
                 Daniel J. Griffith, MS Bar No. 8366
                 Attorney for Defendants

Of Counsel:

**JACKS | GRIFFITH | LUCIANO, P.A.**
P. O. Box 1209
150 North Sharpe Avenue
Cleveland, MS 38732
telephone: (662) 843-6171
facsimile: (662) 843-6176
cell: (662) 721-7323
Email: dgriffith@jlpalaw.com
www.jlpalaw.com

## CERTIFICATE OF SERVICE

  I, Daniel J. Griffith, attorney of record for Defendants do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum in Support of Motion to Dismiss* to be delivered by the ECF Filing System which gave notice to all counsel of record who have appeared herein.

        Carlos E. Moore, Esq.
        TUCKERIMOORE GROUP, LLP
        306 Branscome Drive
        P. 0. Box 1487
        Grenada, MS 38902-1487
        662-227-9940 - phone
        662-227-9941 - fax
        Email: carlos@tuckermoorelaw.com

  **DATED** this 16th day of April, 2018.

            /s/ ***Daniel J. Griffith***
            Daniel J. Griffith