**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILE DIVISION**

**ROBERT SALLEY and
BONITA CUNNINGHAM**                                            **PLAINTIFFS**

**v.**                                            **CAUSE NO: 4:18-CV-66-MPM-JMV**

**WEBSTER COUNTY, MISSISSIPPI, SHERIFF TIM MITCHELL,
IN HIS OFFICIAL CAPACITY, CHIEF DEPUTY DILLON
CATES, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
And DEPUTY BLAKE LOVE, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES**                                            **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

**COME NOW** Plaintiffs Robert Salley and Bonita Cunningham (hereinafter "Plaintiff Salley," "Plaintiff Cunningham," or collectively "Plaintiffs"), by counsel, and files this, their Memorandum in Support of Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss. Plaintiffs move this Honorable Court to deny Defendant's Motion and request a hearing on said Motion, and as grounds therefore, would stated as follows:

1. This case arises from Defendants' violation of Plaintiffs federal and state law rights. As a result, Plaintiffs sustained compensable injuries.

2. On or about March 3, 2018, Plaintiff Salley and his girlfriend Plaintiff Cunningham, were traveling to Cunningham sister's residence in Mantee, MS for a BBQ that she was hosting. Plaintiffs took a series of back roads (rural areas) through Walthall, MS (Webster County) while on their way home. Plaintiff Salley made a wrong turn in Walthall, MS (Webster County) and ended up on Hwy 50 by mistake.

3. As a result of the wrong turn, Plaintiff Salley turned around to get back on the right track. Prior to turning around, Plaintiffs noticed a couple vehicles a good distance

1

down the road from him, but he assumed the individuals had stopped to chat with one another. There were no lights active and/or no other indication that a road block was taking place.

4. Once Plaintiffs were traveling in the right direction, Salley saw a blue light following them in the rear-view mirror. Plaintiffs were unsure if Defendant County Police were following them or if the County Officer wanted to go around, but shortly thereafter, Plaintiffs realized the officer was pursing them. Plaintiff Cunningham noticed it was Defendant Chief Deputy Cates who was trailing behind them.

5. Given the previous history between Plaintiff Salley and employees of Defendant County, Plaintiff Salley immediately became frighten and wanted to get to a location where he would have witnesses to the events with Webster County employees. At that point, he would surrender to the officials despite having no knowledge of why he was being pursued.

6. Plaintiffs traveled through Slate Springs (Calhoun County), through Sabogla, and was struck from the rear by Defendant Chief Deputy Cates.

7. Salley merged onto Hwy 8 at Sabogla, heading west toward Pleasant Grove Road (Plaintiff's residence) in Grenada County. He missed the original turn onto Cadaretta Road and made the left turn onto Millhouse Road. He overshot the left turn and slid into a ditch. Plaintiff Salley attempted to get the vehicle out of the muddy ditch, and Defendant Chief Deputy Cates exited his vehicle.

8. Defendant Chief Deputy Cates approached Plaintiffs' vehicle in Grenada County with his firearm drawn and yelling "Let me see your hand… Let me see your hand." Plaintiffs' vehicle finally emerged from the ditch, and Defendant Chief Deputy Cates

immediately opened fire at Plaintiff's vehicle with both Plaintiffs still inside. Multiple shots were fired at Plaintiffs' vehicle by Defendant Chief Deputy Cates, causing damages to the back window, dashboard, tires, car body, and Plaintiff Salley. Plaintiff Salley sustained bullet wounds to the back of his right shoulder and right arm.

9. Once Plaintiffs arrived in Salley mother's yard, he ran into the house through the front door, exited from the back and hid under his brother's truck. Defendant Chief Deputy Cates and other Webster County police arrived at Plaintiffs' residence thereafter threatening to put the dogs on him, but Plaintiff Salley continued to hide underneath his brother's truck as an attempt to give his mother additional time to get to the residence and witness what was happening.

10. Plaintiff Salley was attached by the K-9 and transported to Baptist Memorial Hospital- Oxford for treatment; thereafter, he was released into the custody of Grenada Police Department.

11. At all ties relevant herein, Deputy Love was present and witnessed the actions of his co-worker, Defendant Chief Deputy Dillon Cates, and failed to intervene.

12. As a proximate result of the Defendants' negligent actions, Plaintiffs sustained injuries and damages.

13. On April 16, 2018, Defendants' filed a Motion to Dismiss seeking this Court for a finding of qualified immunity, dismissal and/or judgment on the pleadings pursuant to Rule 12(b)(1)(2)(6) and (c), Fed. R. Civ. Proc.

## FEDERAL PREMISE

This lawsuit arises from claims brought on behalf of Plaintiffs who allege state and federal claims. It is clear from the face of Plaintiffs' Complaint the Federal Claims alleged are

3

constitutional. First, Plaintiffs issues of pursuit and excessive force survives qualified immunity. Second, there is a plausible violation of the United States Constitution under the requisite intent to injure standard applicable to passenger claims of Plaintiff Cunningham. Third, both Plaintiffs pleaded a plausible official capacity federal claim. Finally, Plaintiffs' Complaint does not duplicate official capacity defendants.

Separately, Plaintiff Cunningham is included in the instant case, her role being that of a victim of civil assault, a passenger detained at gunpoint and handcuffed at the scene while law enforcement officers continued to use excessive force on Plaintiff Salley, who at that time afraid and injured, was attempting to protect himself from further excessive force by taking cover under a vehicle at his mother's house after being unjustifiably shot by the defendants twice.[1] Plaintiff Cunningham can meet her burden most recently articulated under *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), saying that the "clearly established standard requires that that the legal principal clearly prohibit the officer's conduct in the particular circumstances before him." *Id*. at 590. Clearly, Plaintiff Cunningham's separate claims are sustainable.

## STATE LAW PREMISE

It is equally clear from the facts of Plaintiff's Complaint that although State Law Claims are subject to multiple reservations of immunity under state law, they are not sustainable in this case at hand. Defendants allege because suit was filed within thirty days of the incident, there was no time afforded for the requisite tolling upon notice as provided by Miss. Code Ann. §11-46-11. Plaintiffs disagree.

The Mississippi Tort Claims Act ("MTCA") sets forth procedures a claimant must follow in order to assert a claim against a government entity. The relevant rule states:

---

[1] *See Deville,* 567 F.3d at 167-68 (holding that a reasonable jury could find that the degree of force used was not justified where the officer "engaged in very little, if any, negotiation" with the suspect and "instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle.").

After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity. § 11-46-11(1).

Plaintiffs are subject to the requirements of the MTCA because some Defendants named herein is a governmental entity. *See* § 11-46-1(j). As required, Plaintiffs complied with the notice provisions and cites as authority *Jackson v. City of Wiggins,* 760 So.2d 694 (Miss.2000), *City of Pascagoula v. Tomlinson,* 741 So.2d 224 (Miss.1999), and *Jackson v. City of Booneville,* 738 So.2d 1241 (Miss.1999).

In *Tomlinson,* the plaintiff did not strictly follow the ninety-day notice requirement when he filed suit two weeks after providing notice of his claim. *Id.* at 228. Instead of dismissing the lawsuit, the court held the proper remedy was to require the governmental entity to request a stay of the lawsuit. *Id.* This allowed the governmental entity to benefit from the applicable waiting period. *Id.* Should the governmental entity not request a stay, the issue would be considered waived. *Id.*at 229. *See also Williams v. Clay County,* 861 So.2d 953, 977 (Miss.2003); *Leflore County v. Givens,* 754 So.2d 1223, 1231-32 (Miss. 2000); *City of Wiggins,* 760 So.2d at 696; *Jones ex rel. Jones v. Miss. Sch. for Blind,* 758 So.2d 428, 429 (Miss.2000); *City of Booneville,* 738 So.2d at 1246;

In *City of Booneville,* 738 So.2d at 1245, the plaintiff filed her complaint before giving notice to the defendant. Although the plaintiff gave notice and filed her complaint in reverse chronological order of what is required by the MTCA, this court reaffirmed *Tomlinson* and held the proper remedy called for the governmental entity to file a motion to stay the lawsuit in order to benefit from the statutorily-mandated waiting period. *Id.* at 1246.

In *City of Wiggins,* 760 So.2d at 695, the plaintiff filed notice approximately sixty-seven days before he filed suit. Again, the court cited *Tomlinson* and held "the City's sole remedy for Jackson's failure to comply with the ninety-day waiting period was to file a motion to stay the lawsuit, and the City's failure to file such a motion constitute[d] a waiver of its right to object to Jackson's non-compliance with the waiting period." *Id.* at 696.

Similarly, this Court should not allow a dismissal if it is found Plaintiffs did not comply with the notice provision. Instead of dismissing the lawsuit, this Court should hold that the proper remedy is to require the governmental entity to request a stay of the lawsuit. Furthermore, should the governmental entity not request a stay, the issue should be considered waived.

## STANDARD

The standard for addressing a motion for judgment on the pleading under Rule 12(c) is the same as that for addressing a motion to dismiss under Rule 12 (b)(6). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010). Plaintiffs' Complaint provides the grounds for entitlement to relief- including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. However, to survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. *Id*. Therefore, Plaintiff's Complaint alleges a "sufficient factual matter to state a claim that is plausible on its face."

### PLAINTIFFS' COMPLAINT

Plaintiffs' Complaint [Docket #1] seeks relief under state and federal law. There are clearly averments the defendants misrepresented the circumstances involved, intended injury to the Plaintiffs or that is was unlawful to secure Plaintiff Cunningham at the scene.

In using excessive force, Defendant Officers were acting under the authority of a Mississippi statute and pursuant to Police Department policy. Such officer or person shall not use excessive force or force that is greater than reasonably necessary in securing and detaining the offender, overcoming the offender's resistance, preventing the offender's escape, recapturing the offender if the offender escapes or in protecting himself or others from bodily harm.[2]

Furthermore, under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.[3] Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure §1219, pp. 277-278 (3d ed. 2004 and Supp. 2010). see, *e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490

---

[2] Miss Code Ann. §97-3-15

[3] See Skinner v. Switzer, 131 S. Ct. 1289 (2011) ("Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was 'not whether [Skinner] will ultimately prevail' on his procedural due process claim, but whether his complaint was sufficient to cross the federal court's threshold, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." (alteration in original) (internal citations omitted)); see also Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309 (2011) (unanimously affirming the circuit court's reversal of dismissal at the pleadings stage of a securities fraud class action).

U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

## NATURE OF FEDERAL RIGHT AT ISSUE

42 U.S.C. §1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Likewise, Defendants acting under color of state law in their official capacity deprived Plaintiffs of their federal protected rights. Therefore, Plaintiffs should be afforded remedies for their sufferings, as a result of state action, deprivation or rights, privileges, or immunities secured by the Constitution and the laws of the United States.

*Driver*

"A Fourth Amendment seizure [occurs]… when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. at 381 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-597, 109 S.Ct. 1378, 103 L.Ed. 2d 628 (1989). To plead a §1983 excessive force claim, "the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

Defendants Motion to Dismiss admits that at the time of this incident, there existed a clearly established constitutional rights to be free from the use of excessive force. Plaintiffs'

claims in this case are dissimilar to claims that are virtually untenable in most situations of this nature as evidenced by the cases notes below:

i. *Scott v. Harris*, 550 U.S. .372, 377, 127 S. Ct. 1769, 167 L. Ed 686 (2007). (The facts in *Scott v. Harris* is dissimilar to this case at hand. In Scott, there was video evidence that discredited plaintiff and proved "it was the [plaintiff], after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that the [defendant] confronted." *Id*.)

ii. *Pasco ex. rel. Pasco v. Knoblauch*, 566 F.3d 572, 581 (5th Cir. 2009). (Like in *Scott*, the facts in *Pasco* is dissimilar to this case at hand. In *Pasco*, "the plaintiff himself created this dangerous situation and put himself at risk when he fled from the officers. As indicated by the undisputed facts of the chase, it was reasonable for the defendant to believe the plaintiff would continue to pose a danger to anyone he might encounter.).

iii. *Mullenix v. Luna*, 136 S. Ct. 305, 309, 193 L.Ed 2d 255 (2015). (Like *Scott* and *Pasco*, the facts in *Mullenix* is dissimilar to this case at hand. "In *Mullenix*, the defendant confronted a reportedly intoxicated fugitive, set on avoiding capture through high speed vehicular flight, who tice during his flight had threated t shoot police officer, and who was moments away from encountering an officer.").

iv. *Tennessee* v. *Garner,* 471 U.S. 1 (1985). (The court addressed a claim that the use of deadly force to apprehend a fleeing suspect who did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights.)

Furthermore, at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule

Civ. Proc. 56(c). As we have emphasized, "[w]en the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether Plaintiff was driving in such fashion as to endanger human life. Unlike the plaintiff in *Scott*, Plaintiffs version of events is not so utterly discredited by the record that no reasonable jury could believe them. In *Scott*, the Court found the Court of Appeals should not have relied on such visible fiction. Instead, it should have viewed the facts in the light depicted by the videotape. However, unlike Scott, this Court should rely on such visible fiction because a videotape has not been presented that discredits the Plaintiffs version of the events.

Judging the matter on that basis, it is quite clear that Defendants did violate the Fourth Amendment. Defendants do not contest their decision to terminate the car chase by ramming his bumper into Plaintiffs' vehicle constituted a "seizure." "[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means

intentionally applied." *Brower v. County of Inyo,* 489 U.S. 593, 596-597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis deleted). See also *id.,* at 597, 109 S.Ct. 1378 ("If ... the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure"). It is also conceded, by both sides, that a claim of "excessive force in the course of making [a] ...'seizure' of [the] person ... [is] properly analyzed under the Fourth Amendment's `objective reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The question we need to answer is whether Defendants actions were objectively reasonable.

In *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), plaintiff filed suit against defendant under 42 U.S.C. 1983, alleging that defendant's use of force was objectively unreasonable under the Fourth Amendment. The district court granted plaintiff's motion for summary judgment and denied defendant qualified immunity. *Id.* The court concluded that, under the facts in the record, permitting a police dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable. *Id.* Because plaintiff's right was clearly established at the time, the court affirmed the order denying qualified immunity. *Id.*

To prevail on an excessive-force claim, he must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green,* 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery,* 569 F.3d 214, 218 (5th Cir. 2009)). The record plainly shows that Plaintiffs suffered an injury and that Defendants application of force was objectively reasonable.

In excessive-force claims, the reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Application of the *Graham* factors shows that Brown's conduct was objectively unreasonable. Neither turning around after taking a wrong turn nor choosing to wait until you are in an area with witnesses before bringing your vehicle to a stop after Defendants initiated their blue lights is a serious offense, *Brothers,* 837 F.3d at 519, so that factor favors Plaintiffs.

Furthermore, no reasonable officer could conclude that Plaintiffs posed an immediate threat to Defendants or others. Plaintiffs were not suspected of committing a violent offense, and Defendants admitted in their Motion to Dismiss that Plaintiffs were traveling in the opposite direction of the road block, away from Defendants. Furthermore, Defendants admit Plaintiff Salley fled on foot, away from Officers and was hiding under a car. This does not warrant Defendant ramming his vehicle into the rear of Plaintiffs vehicle, nor shooting Plaintiff in the rear arm/shoulder twice when he was running away from Defendants with no weapon present. It's clear there was no evidence that would have led a reasonable officer to believe that Plaintiffs were a threat.

Moreover, Defendants were required to "assess not only the need for force, but also the relationship between the need and the amount of force used." Defendants subjected Plaintiffs to a vehicle pursuit and ramming of Plaintiffs vehicle, inflicted serious injuries, even though Defendants had no reason to believe that Plaintiffs posed a threat, and without first attempting to negotiate. And Defendants continued applying force even after Plaintiffs were actively complying with their orders by unjustifiably using a deadly weapon to shoot Plaintiff twice from the rear. It's clear there was no reason for Defendants to continue applying force.

The same balancing process applied in the cases cited above demonstrates that, notwithstanding probable cause to seize a suspect, an officer may not always do so by using a deadly weapon to shoot him. *Tennessee v. Garner*, 471 US 1 (1985) The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. Id. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment. Id. Against these interests are ranged governmental interests in effective law enforcement. Id. It is argued that overall violence will be reduced by encouraging the peaceful submission of suspects who know that they may be shot if they flee. Id. (Without in any way disparaging the importance of these goals, we are not convinced that the use of deadly force is a sufficiently productive means of accomplishing them to justify the killing of nonviolent suspects. *Delaware* v. *Prouse, supra,* at 659. Petitioners and appellant have not persuaded us that shooting non-dangerous fleeing suspects is so vital as to outweigh the suspect's interest in his own life.)

The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, non-dangerous suspect by ramming his vehicle from the rear and afterwards shooting him in the rear.

***Passenger***

The case of *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L.Ed. 2d 1043 (1998), controls and stands for the premise that high-speed police chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment for deprivation of substantive due process, redressable by action under § 1983. There is a difference of facts between Plaintiffs and Defendants as to whether there was a high-speed police chase with the intent to flee police custody. Simply put there is clearly a violation of underlying constitutional theory at issue here.

Separately, Plaintiff Cunningham is included in the instant case, her role being that of a passenger detained at gunpoint, handcuffed and held at the scene while law enforcement officers continue to use excessive force on Plaintiff Salley who at that time was protect himself from further excessive force by taking cover under a vehicle at his mother's house after being unjustifiably shot by the defendants twice. Plaintiff Cunningham can meet her burden most recently articulated under the *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), saying that the "clearly established standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590. Plaintiff Cunningham's separate claims are sustainable.

### *Supervisor Liability*

Plaintiffs assert that Defendants are also liable based on a theory of supervisory liability. The Fifth Circuit has held that "[a] supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate `when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)).

14

In order "[t]o establish § 1983 liability against supervisors, the plaintiff can show that: (1) the [supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.* (citing *City of Canton*, 489 U.S. at 378, 109 S.Ct. 1197; Burge, 336 F.3d at 370. Furthermore, Defendants supervisors violated Plaintiffs rights by acting with deliberate indifference to a "known or obvious consequence" of failing to train or supervise their officers. *Brown*, 219 F.3d at 457.

***Official Policy Maker Failure to Train/Supervise***

Federal district courts in Mississippi have held chiefs of police to be final policymakers over municipalities' law enforcement functions. See *Moore v. City of Columbus*, 2012 WL 2562841, at *2 (N.D. Miss. June 29, 2012); Taylor v. Town of DeKalb, Miss., 2009 WL 1748523, at *4 (S.D. Miss. June 19, 2009); see also Miss. Code. Ann. § 21-21-1. Plaintiffs also argue that Defendants are liable because they had a duty to train and supervise the officers not to act intentionally to unjustifiably ram into Plaintiffs vehicle and shoot Plaintiff in the rear.

The Supreme Court and the Fifth Circuit have recognized that "[t]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L. Ed. 2d 412 (1989)). Plaintiffs have (1) proven a direct causal link between the municipal policy and the constitutional deprivation, and (2) established that the Defendants consciously enacted a policy reflecting `deliberate indifference' to the constitutional rights of its citizens." *Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998) (quoting *City of Canton*,

489 U.S. at 389, 109 S.Ct. 1197). Furthermore, there is a pattern of similar constitutional violations by Defendants.

## QUALIFIED IMMUNITY

Law enforcement officials, like other public officials acting within the scope of their official duties are shielded from claims of civil liability, including §1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). The purpose of qualified immunity is to protect public officials from the "burden of fighting lawsuits which arise from the good-faith performance of their duties." *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997). However, a law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional rights." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994). Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In assessing a claim of qualified immunity, courts should apply a two-part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation" *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001) However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." *Id*. at 201. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id*. at 202.

To fulfill the protective purpose of qualified immunity the Fifth Circuit has long required more than mere "notice pleadings" when a claimant asserts a §1983 claim against an official in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). More specifically, when an officer raises the qualified immunity defense, "a complaint must present more than bald allegations and conclusory statements." *Wicks v. Mississippi State Employment Svcs.*, 41 F.3d 991, 995 (5th Cir. 1995). In fact, Plaintiffs' Complaint alleges with sufficient particularity all facts establishing a right to recovery, including the facts which negate the official's immunity defense as required in Wicks. See also *Nunez v. Simms*, 341 F.3d 385 (5th Cir. 2003) (holding that heightened pleading in qualified immunity cases requires plaintiffs rest complaint on more than conclusions alone). Plaintiff "cannot be allowed to rest on general characterizations but must speak to the factual particulars of the alleged actions." *Floyd v. City of Kenner*, 351 Fed. Appx. 890, 893 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995)). Furthermore, "heighten pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). Plaintiffs' Complaint does meet the heightened pleading standard.

Also, there are exceptions when plaintiff does not meet the heightened pleading standard. Ordinarily, when a complaint does not establish a cause of action in a case raising the issue of immunity, a district court should provide the plaintiff an opportunity to satisfy the heighten pleading requirements of these cases. *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986) In *Elliott v. Perez*, the court explained that "once a complaint against a defendant state [officer] adequately raises the likely issues of immunity- qualified or absolute- the district court should on its own require of the plaintiffs a detailed complaint alleging with particularity all material facts on which he contends he will establish his right to recovery, which will include detailed facts

supporting the contention that the plea of immunity cannot be sustained," 751 F.2d at 1482. Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified.

In *Wicks*, the court found that by requiring heightened pleading before discovery some plaintiffs will be unable to state a claim. The seeming unfairness of this conclusion is tempered by [the court's] directives to allow a plaintiff initially failing to state a claim the opportunity to amend or supplement the pleadings freely, so that he may state his best case.[4] Where the plaintiff has filed only one pleading, as in *Wicks*, immediate dismissal ordinary is not justified. Thus, on remand, the court found Wicks should be given an opportunity to plead his case properly before dismissal is considered.

Furthermore, the *Lion Boulos Court* [5] noted that when the assertion of the qualified immunity defense turned purely on a question of law, the district court should rule on the motion to dismiss without discovery. Id. at 508. The same would be true if the facts upon which the defense of qualified immunity turned were not disputed by the parties. See *Anderson v. Creighton*, 483U.S. 635, 646 n. 6, 107 S. Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987) ("[I]f the actions Anderson claims he took are different from those the *Creightons* allege … the discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved.").

## FEDERAL THEORY-TRAINING

Plaintiffs' Complaint [Docket #1] seeks relief under state and federal law. There are clearly averments that the defendants misrepresented the circumstances involved, intended injury to the Plaintiffs or that is was unlawful to secure Plaintiff Cunningham at the scene.

---

[4] Jacquez v. Procunier, 801 F.2d 789 (5th Cir. 1986).
[5] Lion Boulos v. Wilson, 834 F.2d 504, 506 (5th Cir. 1987) (citing 28 U.S.C. §1291 (1986)).

Furthermore, under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure §1219, pp. 277-278 (3d ed. 2004 and Supp. 2010).

## MISSISSIPPI TORT CLAIMS ACT

### Intentional Torts- Exception

Municipal actors within the course and scope of employment are presumptively immune from individual claims under state law. [6] However, Government immunity is waived for employee misconduct only if an employee is acting within the course and scope of his employment. See *City of Jackson v. Sandifer*, 107 So. 3d 978 (Miss. 2013). Furthermore, an official's conduct is not protected by qualified immunity if, in light of preexisting law, it was apparent that the conduct, when undertaken, constituted a violation of the right at issue. This is true even if the "very action in question" had not then been held to be a constitutional violation. See *Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039; *Spann v. Rainey*, 987 F.2d at 1114-15 (reasonableness of official conduct judged in light of law existing at time of violation). "Put another way, officials must observe general, well-developed legal principals." *Doe v. Taylor ISD*, 15 F.3d at 455 (quoting *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F2d 303, 305 (5th Cir. 1987).

### Negligence Claims

There are negligence claims authorized against law enforcement under state law.[7] Miss Code. §11-46-9(1)(c) provides in relevant part that "(1) A governmental entity and its employee

---

[6] Miss. Code Ann. §11-46-7(2)
[7] Miss Code. Ann. §11-46-9(1) (c)

19

acting within the course and scope of their employment or duties shall not be liable for any claim: (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury. See Also *City of Greenville v. Jones*, 325 So. 2d 106 (Miss. 2006) Therefore, Plaintiffs' claims premised upon negligence theories should not be dismissed.

### *Miss. Code § 11-46-9(1)(c)*

Defendants contend that Plaintiffs state law claims are barred by the MTCA because they were engaged in criminal activity. Pursuant to § 11-46-9(1)(c) of the Mississippi Code:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Plaintiffs were not engaged in criminal activity. As a result of the wrong turn, Plaintiffs turned around to get back on the right track. Prior to turning around, Plaintiffs noticed a couple vehicles a good distance down the road from him, but he assumed the individuals had stopped to chat with one another. There were no lights active and/or no other indication that a road block was taking place. Once Plaintiffs were traveling in the right direction, Plaintiffs saw a blue light following them in the rear-view mirror. Plaintiffs were unsure if Defendant County Police were following them or if the County Officer wanted to go around, but shortly thereafter, Plaintiffs realized the officer was pursing them. Plaintiffs noticed it was Defendant Chief Deputy Cates who was trailing behind them. Given the previous history between Plaintiffs and employees of

Defendant County, Plaintiffs immediately became frighten and wanted to get to a location where they would have witnesses to the events with Webster County employees. At that point, they would surrender to the officials despite having no knowledge of why they were being pursued.

## INJUNCTIVE RELIEF

There is federal jurisdiction to grant Plaintiffs some form of immunity by injunction from future criminal acts.[8] Furthermore, were the court to assume jurisdiction, Plaintiffs can satisfy the four mandatory elements required for injunctive relief:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat that failure to grant the injunction will result in irreparable injury;

(3) the threatened injury outweighs any damage that the injunction will case the adverse party; and

(4) the injunction will not have an adverse effect on the public interest.

In *Williams v. Kaufman County*, a demand for injunctive relief concerning a prohibition against future strip searches at a local jail was addressed as not being in the public interest. The court noted sound policy reasons for not wanting to assume the duties of administration of Kaufman County Jail and found no purpose in enjoining the County and its Sheriff from violating the United States Constitution when they already have a duty to obey and enforce it. *Id*.

---

[8] One commentator has noted the utility of injunctive relief in securing rights guaranteed by state civil rights acts: A number of factors combine to make injunctive relief particularly appropriate to remedy infringement of an individual's civil rights. The traditional basis for the exercise of equity powers is inadequacy of the remedy at law. When criminal enforcement is lax or difficult to obtain, the legal remedy is, for all practical purposes, inadequate. And even when enforcement is adequate, the imposition of a criminal penalty is an unsatisfactory substitute for the actual enjoyment of the rights created by legislation. The award of monetary damages is equally unsatisfactory because of the nature of the personal right infringed. Not only are such damages difficult to assess, they cannot provide full compensation. Another factor of practical importance is the likelihood of a multiplicity of suits at law under those statutes which make a civil action available. Finally, the injunction offers the flexibility needed in dealing with a complex social problem. Comment, Availability of Injunctive Relief Under State Civil Rights Acts, 24 U. CHI. L. REv. 174, 180 (1956).

Dissimilar to the public officials in Kaufman County, public value would arise in this case from an order enjoining the County to follow the Constitution.

### SUMMATION

Plaintiffs' Complaint clearly provided substantial factual details specifying how the defendant Deputies directly participated in the alleged unconstitutional conduct. Defendants were clearly within the course and scope of their duties and participated n conduct which calls into question the intent to injure standard of *Sacramento v. Lewis* or the individual immunity standard of the MTCA.

Plaintiffs did not rely on collective allegations, but instead specified how each defendant was involved in the alleged unconstitutional conduct. See *Bivens v. Forrest County*., No. 2:13-CV-8-KS-MTP, 2015 WL 1457529, at *7 (S.D. Miss. March 30, 2015) (holding that "collective allegations" against multiple defendants are insufficient to meet the heightened pleading standard. Because Plaintiffs met the heightened pleadings standard, their federal claims against these individual Defendants must not be dismissed. As a result, this Court should not order a *Schultea* Reply requiring Plaintiffs to provide information sufficient to overcome each individual Defendant's immunity defenses because Plaintiffs have already met this requirement. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

**WHEREFORE, PREMISES CONSIDERED** Plaintiffs pray this Honorable Court will deny Defendants' Motion to Dismiss. Plaintiffs also pray for all other general relief this Court deems to be fair and just.

Respectfully submitted this the 30th day of April 2018.

**PLAINTIFFS**

/s/ *Carlos E. Moore*
CARLOS E. MOORE, MSB#100685

**OF COUNSEL :**
**TUCKER MOORE GROUP**
**306 Branscome Drive**
**P. O. Box 1487**
**Grenada, Mississippi 38901**
**Office:(662) 227-9940**
**Fax:    (662) 227-9941**
**carlos@tuckermoorelaw.com**

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the above and foregoing pleading was transmitted via ECF to all counsel of record.

This the 30th day of April 2018.

/s/ *Carlos E. Moore*
CARLOS E. MOORE, MSB#100685