# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

ROBERT SALLEY and
BONITA CUNNINGHAM                                                                 PLAINTIFFS

v.                                                                         NO: 4:18-CV-00066-M

WEBSTER COUNTY, MISSISSIPPI,
SHERRIF TIM MITCHELL, in his Official Capacity,
CHIEF DEPUTY DILLON CATES, in his Individual                               DEFENDANTS
Official Capacities, AND DEPUTY BLAKE LOVE, in his
Individual and Official Capacities

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on Defendants' *Motion to Dismiss* [9] and *Motion to Dismiss via Abstention* [11]. Having reviewed the motions, the parties' submissions, the complaint, and relevant case law, the Court is now prepared to rule.

### I.  BACKRGOUND

On March 3, 2018, Robert Salley and Bonita Cunningham ("Plaintiffs") traveled to the Town of Mantee, Mississippi in Webster County. While making their way home to Grenada County, Salley took a series of Webster County back roads and, regrettably, took a wrong turn onto Highway 50. Salley noticed some stopped cars ahead and assumed that the drivers had pulled over to "chat." This presumption proved wrong for, unbeknownst to Salley, Webster County Sherriff deputies were conducting a road block, though their "blue lights" were not active. Consequently, Salley did not identify the vehicles as law enforcement.

Salley turned his vehicle around and reversed direction. Checking his rear-view mirror, he noticed flashing blue lights on a vehicle behind him, indicating the vehicle was a law enforcement cruiser, but Salley could not ascertain whether the cruiser was attempting to pull him over or pass, so he continued down the road. Further examination by Salley revealed the driver of the cruiser to

1

be Chief Deputy Dillon Cates of Webster County. Salley alleges that given the tempestuous history between himself and the Webster County Sheriff's Office, he decided not to pull over.

Salley travelled through Slate Springs in Calhoun County and then, according to the Plaintiff's allegations, through the community of Sabola[1] with deputies following behind with blue lights flashing. At some point, Chief Deputy Cates rear-ended Salley's vehicle. Undeterred, Salley journeyed on and merged onto Highway 8 and headed west toward Pleasant Grove Road in Grenada County. Yet again, Salley made a wrong turn, missing his intended turn onto Cadaretta Road, and instead turned left onto Millhouse Road where he "overshot" his left turn and landed his vehicle in a ditch. As Salley attempted to coax his vehicle out of the ditch Chief Deputy Cates exited his cruiser and, pistol drawn, approached Salley's vehicle yelling "Let me see your hand. . . Let me see your hand."

Salley's vehicle leapt from the ditch and Chief Deputy Cates opened fire. Bullets struck the vehicle's rear window, dashboard, tire and body, and Salley absorbed "bullet wounds to the back of his right shoulder and right arm." Nevertheless, the intrepid Salley raced on, finally arriving at his mother's home in Grenada County, where he ran into the house, out the back door, and hid under a parked truck.

Chief Deputy Cates, along with other Webster County deputies, and now including a K-9 unit, arrived at the matriarch's residence where they arrested Bonita Cunningham, Salley's passenger, and detained her while they tried to get their man. It appears, though the facts alleged by the parties are lacking, that despite pleas from the deputies, Salley would not come out from under the truck. Continuing his pattern of defying law enforcement directives, Salley stayed under

---

[1] The Court is unaware of a "Sabola" off of Highway 8 and has been unable to locate such a city or town in the counties of Webster, Calhoun, or Grenada. The Court did, however, locate a Sabougla, Mississippi off Highway 8 between Slate Springs and Gore Springs. The Court can only assume that Sabougla is the community referenced in the facts of this case.

the truck, at which point, the deputies threatened to release the dog. According to Salley, he stayed under the truck "in an attempt to give his mother additional time to get to the residence and witness what was happening."

The deputies released the dog, which apparently went under truck, though this fact is not established by the parties. Nevertheless, the deputies got their man. Officers transported Salley to Baptist Memorial Hospital in Oxford for treatment and later delivered him into the custody of the Grenada Police Department.

Salley and Cunningham filed suit on March 15, 2018. Defendants subsequently filed a *Motion to Dismiss* [9] in which they ask this Court to "make a finding of qualified immunity, dismissal and/or judgment on the pleadings" as to most of Plaintiff's claims, and in the alternative filed a *Motion to Dismiss via Abstention* [11]. We now address these motions.

## II. STANDARDS

### A. Motion to Dismiss Standard

Before the Court can grant a motion to dismiss, Defendant must show that Plaintiffs have not met the relevant pleading standard to state a claim. Defendant must show that Plaintiff's complaint fails to contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony

*Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir.2011) (quoting *Twombly*, 550 U.S. at 555.

Upon reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit its examination to the complaint, documents attached to the complaint, and documents accompanying the motion to dismiss that reference the complaint. *Lone Star Fund V(US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010). The Court must liberally construe the complaint in the light most favorable to Plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir.2005).

### B. Qualified Immunity Standard

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). Qualified immunity requires a two-pronged analysis. *Kinney v. Weaver*, 367 F.3d. 337, 374 (5th Cir. 2004). The court has discretion to decide "which of the two prongs" to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L. Ed. 2d 565 (2009). To rebut a defendant's qualified immunity defense, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011). For a right to be clearly established, it must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'" *Id*. 563 U.S. at 741, 131 S.Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987)).

## III. DISCUSSION

**A. Motions to Dismiss Federal Claims [9]**

Plaintiffs bring the following federal claims: "Violations of 42 U.S.C. § 1983—Arrest (Count Two)"; "Violations of 42 U.S.C. § 1983—Refusing or Neglecting to Prevent (Count Three)"; "Excessive Force (Count Seven)"; and "Violation of Federal Due Process, Equal Protection, and Civil Rights Law under 42 U.S.C. § 1983 and 28 U.S.C. § 1434 (Count Nine)".

**a. Qualified Immunity**

When a motion to dismiss is based upon qualified immunity, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Id*. (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994–95 (5th Cir. 1995)). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*. at 648. Only then, once the court has found that a plaintiff has so pleaded "if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id*. (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–508 (5th Cir. 1987)).

Defendants, in their initial brief, do not attempt to delve into the facts of the case or into the deficiencies contained within the complaint. They simply provide a conclusory statement that deficiencies exist within the complaint. Additionally, in their reply brief, Defendants accuse the Plaintiffs of engaging in several threatening and serious acts, such as refusing to obey thirty commands and approaching an officer on a narrow highway shoulder, which have not been sufficiently presented to this Court. Plaintiffs bring various federal claims against the Defendants,

such as a claim of excessive force in which the Court cannot at this time render a ruling on whether the deputies' use of force was reasonable.

After review of the complaint, and the party's submissions, this Court is unable to determine—based on the pleadings and the superficial arguments of the parties—whether Defendants are in fact entitled to qualified immunity. The Court, therefore, dismisses Defendants' motion for qualified immunity without prejudice and orders that expedited discovery be conducted on this issue so that it may be re-filed in the context of a motion for summary judgment.

### B. Motion to Dismiss State Law Claims [9]

In the Complaint, Plaintiffs bring the following state law claims: "Negligent, Grossly Negligent, Wanton Failure in Hiring and to Monitor, Train, and Supervise the Deputies Involved (Count Four)"; "Intentional and/or Negligent Infliction of Emotional Distress (Count Five)"; "Civil Assault and Battery (Count Six)"; "Reckless Disregard (Count Eight)"; and "Bystanders' Liability (Count Ten)".

#### a. Failure to satisfy notice of claim requirement under MTCA

The MTCA is the exclusive remedy "against a governmental entity and its employees." Miss. Code Ann. § 11–46–7(1). Section 11–46–11(1) of the Mississippi Code states that "[a]fter all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity."

Defendants argue that Plaintiffs' state law claims must be dismissed because Plaintiffs failed to comply with the notice requirements under § 11–46–11(1). Plaintiffs, however, acknowledging that they are subject to the notice requirements, argue that they in fact satisfied the

requirements—regardless of their filing suit within twelve days of the incident—and that Defendants' only remedy is for this Court to allow Defendants an opportunity to seek a stay of the suit. In their argument, Plaintiffs rely heavily on overruled case law. The cases relied upon by Plaintiffs—*Jackson v. City of Wiggins*, 760 So.2d 694 (Miss. 2000); *City of Pascagoula v. Tomlinson*, 741 So.2d 224 (Miss. 1999); and *Jackson v. City of Booneville*, 738 So.2d 1241 (Miss. 1999)—where allowing the governmental entity to file a stay of the suit was held to be the proper remedy when a plaintiff failed to satisfy MTCA notice requirements[2], were each overruled as to the ninety-day requirement by *University of Mississippi Medical Center v. Easterling*, 928 So.2d 815 (Miss. 2006).[3] Since the Mississippi Supreme Court's ruling in *Easterling*, "the ninety-day notice requirement under section 11–46–11(1) is a 'hard-edged, mandatory rule which the Court strictly enforces.'" *Id*. at 820. *See also Gorton v. Rance*, 52 So.3d 351 (Miss. 2011) (citing *Brown v. Sw. Miss. Reg'l Med. Ctr.*, 989 So.2d 933, 936 (Miss. Ct. App. 2008) where the court stated that "*Easterling's* strict compliance is meant to apply equally to cases in which no notice is filed, notice is filed after the complaint, or the complaint is filed sooner than ninety days after filing notice").

---

[2] *Jackson v. City of Wiggins*, 760 So.2d 694 (Miss. 2000) (court held that the sole remedy was to allow the governmental entity to file a motion to stay the suit when the plaintiff filed suit sixty-seven days after notice and that a failure to seek a stay would waive the issue); *City of Pascagoula v. Tomlinson*, 741 So.2d 224 (Miss. 1999) (court allowed the governmental entity an opportunity to request a stay after the plaintiff filed a complaint within two weeks of having provided the entity with notice, court also cited that and that a failure to seek a stay would waive the issue); and *Jackson v. City of Booneville*, 738 So.2d 1241 (Miss. 1999) (court held proper remedy was to allow the governmental entity to seek a stay of the suit when plaintiff first filed her complaint and then gave the entity notice).

[3] Section 11-46-11 of the Mississippi Code was approved on April 1, 1993 in House Bill Number 417. In 1997, the Mississippi Supreme Court held in *City of Jackson v. Lumpkin*, 697 So.2d 1179 (Miss. 1997) that strict compliance of § 11-46-11 was required. With a series of decisions issued by the Mississippi Supreme Court, including the three cases cited by Plaintiffs, Mississippi shifted to "substantial compliance" of § 11-46-11—allowing leeway to attorneys who failed to strictly comply with § 11-46-11. However, such substantial compliance requirement was in conflict with the requirements set out in the section. In 2006, with its ruling in *Easterling*, the Mississippi Supreme Court finally shifted back to requiring **strict compliance** with § 11-46-11. It is now, roughly, thirteen (13) years since the court's ruling in *Easterling*, and roughly twenty-six (26) years since the enactment of § 11-46-11 into Mississippi law. It is high time that legal practitioners in the State of Mississippi understand that they must <u>strictly</u> comply with § 11-46-11 or risk dismissal of their client's claims. No claims will be allowed to proceed against a government entity until proper notice has been given.

This "notice requirement applies to suit brought against an employee, acting in his official capacity." *McGehee v. DePoyster*, 708 So.2d 77, 79 (Miss. 1998).

Here, the incident occurred on March 3, 2018. Plaintiffs filed this suit twelve days later on March 15, 2018. Plaintiffs failed to comply with the MTCA's ninety-day notice requirement prior to filing their suit. The Plaintiffs' state law claims against the Defendant County and its deputies in their official capacity are, therefore, dismissed without prejudice.

### b. Immunity under Mississippi Law

Defendants argue that dismissal of the state law claims against the deputy defendants in their individual capacities is warranted pursuant to § 11–46–7(2) of the Mississippi Code. The MTCA reads:

> (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander or any criminal offense.

Miss. Code Ann. § 11–46–7(2).

Defendants further seek dismissal of Plaintiff's claims based on § 11–46–9(1)(c) of the Mississippi Code. The MTCA states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> > (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11–46–9(c).

As to immunity under § 11–46–9(c), Defendants argue that the defendant deputies are entitled to immunity because Plaintiffs were engaged in criminal activity. Defendants state that Plaintiff "Salley was already indicted and is now charged with felony flight," yet fail to provide the Court with evidence of such pending charges. Plaintiffs, however, argue that they were not engaged in criminal activity and proceed to rehash their version of the facts. The Defendants respond by simply restating that these claims are barred.

The Court is unable to determine, based on review of the Complaint and the conclusory arguments presented by the parties, whether the deputies were acting within the course and scope of their employment[4] and whether the deputies acted in reckless disregard. The Court finds that both issues, whether the defendant deputies are entitled to immunity under § 11–46–7(2) and/or § 11–46–9(c), are matters best left to be decided at the summary judgment stage after the parties have provided the Court with sufficient evidence and adequately argued their positions. The Court, therefore, dismisses Defendants' motion as to this issue without prejudice.

### C. Motion to Dismiss via Abstention [11]

This Court next considers Defendants' motion for it to abstain from hearing this case under *Colorado River Water Conservation Dist. v. U.S.* 424 U.S. 800, 96 S.Ct. 1236 (1976). This Court notes at the outset that *Colorado River* abstention represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. In order to persuade this Court that this quite narrow abstention doctrine applies in this case, it would be incumbent upon the defendants to fully inform the Court about any parallel civil action that is pending in state court. From reading defendants' brief, however, it is not clear to this Court that there even *is* a pending state court action in this

---

[4] The Court notes that certain conduct cannot be considered as being within the course and scope of their employment. *See Hunter v. Town of Edwards*, 871 F.Supp.2d 558, 565–566. (S.D. Miss. 2012).

case. If such a state court action exists, however, defendants have clearly given this Court insufficient information to conclude that it falls within the narrow range of *Colorado River* abstention.

Defendants' request that this court abstain under *Younger* or the Anti-Injunction Act is similarly deficient. These abstention doctrines would preclude this Court from enjoining a state court criminal action, and certain forms of civil actions as well. However, it is clear from the complaint that this case is primarily a civil action for damages under § 1983, and this Court plainly has jurisdiction over, and no grounds to abstain from hearing, this action. Indeed, the only reference to any injunction which this Court can discern from the complaint is one seeking to enjoin defendants engaging in conduct similar to that which they are alleged to have committed in this case. This Court will likely not grant this requested injunctive relief, since it appears that plaintiffs lack standing to assert it under *Los Angeles v. Lyons*, 46 U.S. 96 (1983). This claim is not the proper subject of a request for *Younger* abstention or for the application of the Anti-Injunction Act. Therefore, Defendants' motion to dismiss via abstention is denied.

## IV. CONCLSUION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' *Motion to Dismiss* [9] is **DISMISSED WITHOUT PREJUDICE** as to qualified immunity. The Defendants are instructed to reassert qualified immunity by way of a motion for summary judgment once limited discovery on the issue has been conducted.

**IT IS FURTHER ORDERED AND ADJUGED** that Defendants' *Motion to Dismiss* [9] is **GRANTED** as to Plaintiffs' failure to satisfy notice requirements pursuant to the MTCA. State law claims brought against the Defendant County and its deputies in their official capacity are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' *Motion to Dismiss* [9] is **DISMISSED WITHOUT PREJUDICE** as to immunity under Mississippi law pursuant to § 11–46–7(2) and § 11–46–9(c). As discussed above, these matters are to be brought before the Court in a motion for summary judgment.

**IT IS FURTHER ORDERED AND ADJUDGED** that any issues not ruled upon by the Court in this order are to be refiled in a motion for summary judgment.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' *Motion to Dismiss via Abstention* [11] is **DENIED**.

SO ORDERED, this, the 21st day of February, 2019.


/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**